| | |
|---|---|
| EDGAR GALLEGOS GARCIA, | Case No. 17-CV-01103 (NEB/DTS) |
| Petitioner, | |
| v. | |
| LESLIE TRITTEN, District Director, United States Citizenship & Immigration Services; KEVIN MCALEENAN, Secretary of the Department of Homeland Security; WILLIAM BARR, United States Attorney General; L. FRANCIS CISSNA, Acting Director, United States Citizenship & Immigration Services, | AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER OF JUDGMENT |
| Respondents. | |

This matter comes before the Court on Edgard Gallegos Garcia's request for *de novo* review of the United States Citizenship and Immigration Services' denials of his naturalization application. For the reasons that follow, the Court grants Edgard Gallegos Garcia's naturalization application.

## FINDINGS OF FACT

1. Edgar Gallegos Garcia is a native and citizen of Mexico. (Ex. J–9.)

2. In February 2002, Garcia became a lawful permanent resident of the United States. (*Id.*; Garcia Testimony, Trial Transcript ("Tr.") at 38:11–24.)

3. In or about early 2013, Garcia applied for a police cadet position with the City of Hopkins. (Ex. J–2.) The Hennepin County Joint Community Police Partnership

funded the cadet position for the purpose of increasing diversity of the police department. (Ex. J–7.) The minimum qualifications required the candidate to be a United States citizen or be lawfully residing in the United States with authorization to work and "capable of becoming a U.S. citizen by the expected time of appointment to a police officer position." (*Id.*)

4. The City of Hopkins completed a background check on Garcia when it considered his application. (Ex. J–3.) The background check does not mention his immigration status. (*Id.*)

5. In May 2013, the City of Hopkins hired Garcia as a police cadet. (Ex. J–5.) Garcia completed a Form I–9, stating he was a lawful permanent resident and not a citizen. (Ex. J–2.) He provided the police department with his permanent resident card. (*Id.*)

6. After completing the cadet course, the City of Hopkins offered Garcia a peace officer position, which is a sworn position with standards set by the Minnesota Board of Peace Officers Standards and Training ("POST Board"). (Ex. J–4.) Garcia did not know that the POST Board standards include that a peace officer in Minnesota must be a United States citizen.

7. The City of Hopkins completed an updated background check on Garcia, which did not address or verify Garcia's immigration status. (Ex. J–8.)

8. No one asked Garcia to update his I–9 and the City of Hopkins did not attempt to confirm Garcia's immigration status before offering him the peace officer position. (Johnson Testimony, Tr. at 20:18–25.)

9. Garcia likewise does not recall having a conversation with anyone regarding his status after completing the Form I–9 and providing a copy of his permanent residence card. (Garcia Testimony, Tr. at 48:13–15.)

10. When Garcia became a full–time peace officer, his hourly wage increased from $15.16 per hour to $26.59 per hour. (*Compare* Ex. J–4 with Ex. J–5.) But to become a peace officer, Garcia took a reduction in wages from his previous job as a carpenter, where he earned $35–36 per hour. (Garcia Testimony, Tr. at 56:2–9; 42:11–14.) Garcia was willing to take this cut in pay because of his long-held dream of becoming a police officer. (*Id.* at 56:6–7.)

11. During the relevant period, Brent Johnson was a captain in the police department and Michael Reynolds was the chief of police. At the time of trial, Brent Johnson was the chief of police and Michael Reynolds was retired. (Johnson Testimony, Tr. at 8:1–6; (Deposition of Reynolds ("Reynolds Dep.") at 6:9–16.)

12. In August 2014, Garcia had a meeting with former Chief Reynolds. Reynolds congratulated Garcia on becoming a peace officer, and handed him a form for his POST Board certification, which was already completed. (Garcia Testimony, Tr. at 52:22–54:1.) Garcia signed it. (*Id.*; Ex. J–1.)

13. Prior to that meeting, Johnson had completed the POST Board certification form (except for the signatures). He gave it to Reynolds so Reynolds could sign it and have Garcia sign it. (Johnson Testimony, Tr. at 22:6–23:5.)

14. Above the signature is an affirmation that Garcia was a citizen of the United States. (Ex. J–1.)

15. Garcia signed the application without first reading it. (Garcia Testimony, Tr. at 54:6–11; 62:17–23.) He failed to read the form out of excitement from being offered the job and because he relied on the Chief's explanation of the form. (*Id.* at 54:6–11.) Thus he did not realize he was affirming anything about his immigration status. (*Id.* at 62:17–19.)

16. Garcia is not a citizen of the United States. (*Id.* 38:17–18.)

17. The State of Minnesota requires peace officers to be United States citizens. Minn. R. 6700.700, subpart 1, A (2008). There is no similar citizenship requirement for police cadets. (Reynolds Dep. at 10:20–11:5.)

18. No one at the police department realized there was an issue with Garcia's citizenship, and Garcia never looked into the citizenship requirement for Minnesota police officers. (Reynolds Dep. At 21:1–3; Garcia Testimony, Tr. At 76:13–16.)

19. The POST Board approved Garcia's application for a peace officer license. (Garcia Testimony, Tr. at 57:16–18.)

20. Garcia resigned as a peace officer with the City of Hopkins several months later. (Reynolds Dep. at 29:5–30:6.) Garcia's separation with the City of Hopkins was unrelated to his immigration status. (*Id.* at 53:13–17.)

21. Garcia began looking for another peace officer job and considered one in Texas to be closer to family. (Garcia Testimony, Tr. at 59:12–14.) He contacted a police department in Texas, and that department told Garcia he was unable to apply because he was not a United States citizen. (*Id.* at 59:15–19.)

22. Immediately thereafter, Garcia began the citizenship process and filed a N–400 naturalization application with the United States Citizenship and Immigration Services ("USCIS"). On his naturalization application, Garcia denied ever claiming to be a United States citizen. (*Id.* at 65:24–66:2; Ex. J–9.) The form asks, "Have you ever claimed to be a U.S. citizen (in writing or any other way)?" and Garcia checked "No." (Ex. J–9.)

23. Garcia signed the naturalization application, stating under "penalty of perjury under the laws of the United States of America, that this application, the evidence submitted with it, are all true and correct." (*Id.*)

24. At the time Garcia completed the application, he had no reason to believe his answers were incorrect. (Garcia Testimony, Tr. at 62:24–63:2.)

25. USCIS interviewed Garcia on August 12, 2015 as part of the process for adjudicating his naturalization application. (*Id.* at 63:3–5; Ex. J–9.) At his interview,

Garcia re–affirmed the accuracy of the information submitted on his application, having no reason to believe that he had claimed he was a citizen in error. (Garcia Testimony, Tr. at 65:18–66:9.)

26. USCIS denied his application for naturalization on January 26, 2016. [ECF. Nos. 1 ("Petition") at ¶18, 12 ("Answer") at ¶18.]

27. Garcia was told he was ineligible for naturalization for having falsified or lied on his application for a peace officer license (Ex. J–1) and at his interview regarding his citizenship in order to benefit himself. (Garcia Testimony, Tr. at 66:16–21; Ex. J–10.)

28. Garcia timely filed a request for a rehearing on a decision in his naturalization proceedings and USCIS conducted its rehearing on May 2, 2016. (Petition ¶¶19– 20; Answer ¶¶19–20; Ex. J–10.)

29. Prior to the rehearing, Garcia obtained a copy of his application for peace officer license and realized that he had incorrectly affirmed being a United States citizen on the application. (Garcia Testimony, Tr. at 54:25–55:11; 69:8–12.) During his rehearing interview, Garcia acknowledged the mistake. (*Id.* at 69:13–15.)

30. USCIS affirmed its denial of Garcia's naturalization application. (Petition ¶21; Answer ¶21; Ex. J–10.)

31. Garcia filed this Petition for a *de novo* review of the denial of his naturalization application under 8 U.S.C. § 1421(c).

32. There was no incentive for Garcia to lie about being a United States citizen to obtain the peace officer position. Both Reynolds and Johnson testified that the peace officer position would likely be held open for Garcia until he became a naturalized United States citizen. (Reynolds Dep. At 52:10–18; Johnson Testimony, Tr. at 26:14–15.) Garcia testified credibly that, had he known he was required to be a citizen, he would have waited to accept the peace officer position until he was naturalized. (Garcia Testimony, Tr. at 70:5–11.)

33. Garcia was the first successful cadet–to–officer position in the department. (Johnson Testimony, Tr. at 21:4–5.) The Hopkins Police Department had no system in place to verify immigration status because it never previously had the situation of a non–citizen cadet applying for the peace officer position. (*Id.* at 35:11–13.)

34. The only time Garcia was affirmatively asked about his immigration status, he provided the necessary documentation and was truthful.

35. Chief Johnson does not believe any omission or affirmation regarding Garcia's citizenship was intentional. (*Id.* at 35:1–5.) Garcia consistently testified that he was not aware that he affirmed he was a United States citizen by signing the application form. (Garcia Testimony, Tr. at 54:6–11; 62:17–19; 69:25–70:2.)

### CONCLUSIONS OF LAW

36. When USCIS denies a naturalization application, the applicant may seek judicial review of the denial under 8 U.S.C. § 1421(c).

37. 8 U.S.C. § 1421(c) permits the district court to conduct a *de novo* review of USCIS's

denial of a naturalization application:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

38. The applicant "bear[s] the burden of establishing by a preponderance of the

evidence that he or she meets all the requirements for naturalization." 8 C.F.R.

§ 316.2(b). Doubts are to be resolved in favor of the United States and against the

claimant. *Berenyi v. Dist. Dir., INS* 385 U.S. 630, 637 (1967).

39. Section 1427 provides the basic requirements for naturalization. The only

requirement at issue in this proceeding is § 1472(a), which states:

> during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a).

40. Whether a naturalization applicant possesses the requisite good moral character is

determined "on a case–by–case basis taking into account the elements enumerated

in this section and the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2).

41. First, a person does not have good moral character if he "has given false testimony for the purpose of obtaining any benefits under this chapter." 8 U.S.C. § 1101(f)(6); *see also* 8 C.F.R. § 316.10(b)(2)(vi). False testimony "is limited to oral statements made under oath." *Kungys v. United States,* 485 U.S. 759, 780 (1988).

42. The false testimony provision applies when the applicant "has told even the most immaterial lies with the *subjective intent* of obtaining immigration or naturalization benefits." *Kungys,* 485 U.S. at 779–80 (emphasis added). "Accordingly, neither accidental falsehoods nor willful misrepresentations for reasons other than obtaining immigration benefits are sufficient to foreclose a finding of good moral character." *Jibril v. U.S. Citizenship & Immigration Servs.,* No. CIV. 06-600 JNE/JJG, 2008 WL 482353, at *1 (D. Minn. Feb. 19, 2008).

43. The requisite subjective intent is not found when false testimony resulted from "faulty memory, misinterpretation of a question, or innocent mistake." *United States v. Hovsepian,* 422 F.3d 883, 887–88 (9th Cir. 2005) (en banc).

44. Garcia falsely stated on his N–400 naturalization application that he had never previously claimed United States citizenship. He admits he incorrectly claimed to be a United States citizen when he signed the application for a peace officer license.

Therefore, his statement on the N–400 application that he had never claimed to be a United States citizen was false.

45. Garcia then appeared for an interview with USCIS in August 2015 regarding his N–400 application. At that time, he confirmed his answer and failed to correct the application, not knowing the peace officer license application stated he was a citizen.

46. Later, when Garcia appeared for his rehearing and was again questioned about whether he had falsely claimed United States citizenship, he acknowledged that he had discovered his prior answers were incorrect.

47. Garcia's explanation for his answer on his N–400 application and at the interviews are credible. Garcia credibly testified that he did not read the application to obtain a peace officer license and was unaware he was attesting to being a United States citizen before he signed the form.

48. Garcia's credible testimony about his excitement of being offered the peace officer position and not having prepared the application form himself, bolstered by Chief Johnson's testimony, confirms Garcia was not aware of the contents of the peace officer license application.

49. Moreover, Garcia was truthful about his immigration status when he was initially recruited as a police cadet. Garcia's personnel file contained a copy of his permanent resident card.

50. Both former Chief Reynolds and Chief Johnson confirmed that Garcia did not have incentive to lie on the peace officer license application because Garcia's promotion could have been delayed until he naturalized.

51. Once Garcia's naturalization application was denied, he obtained a copy of his peace officer license application and became aware of his false claim. Garcia then explained his false affirmation at his rehearing, maintaining that he was not aware of the claim at his initial interview and therefore had not falsely testified.

52. Garcia's testimony is credible that he was unaware of the false claim until after his naturalization application was denied, and therefore he did not have the subjective intent of falsely testifying to obtain naturalization benefits.

53. Garcia's isolated, innocent mistake of falsely claiming United States citizenship does not foreclose a finding of good moral character. *Cf. Chaudhry v. Napolitano*, 749 F. Supp. 2d 1184, 1195 (E.D. Wash. 2010) (finding "that a disturbing pattern of deceit for immigration-related purposes" precluded a finding of good moral character), aff'd, 542 F. App'x 570 (9th Cir. 2013).

54. Because Garcia has demonstrated that false testimony regarding his immigration status was not given with the purpose to obtain naturalization benefits, the Court concludes that Garcia is able to meet his burden of establishing the good moral character required to qualify for naturalization.

55. The relevant statute also contains a "catch-all" provision, under which a person can be found "not of good moral character" for conduct not specifically barred by the statute, including false claims to citizenship. 8 U.S.C. § 1101(f); *In re Guadarrama de Contreras*, 24 I. & N Dec. 626 (BIA 2008). The catch-all provision expressly refers to aliens who "make[] a false statement or claim of citizenship." 8 U.S.C. § 1101(f).[1]

56. The catch–all provision does not mandate a finding of bad moral character for a person who falsely claims to be a citizen. *In re Guadarrama de Contreras*, 24 I. & N. Dec. at 626-627. Rather, the provision "was designed to foreclose a finding that the person lacked good moral character" when he falls within one of the exceptions. *Id.* at 626.

57. Where a naturalization applicant is not statutorily barred from proving the requisite good moral character, the finder of fact must compare the applicant to the "standards of the average citizen in the community of residence" in making the good moral character determination. 8 C.F.R. § 316.10(a)(2).

58. Garcia did not knowingly affirm United States citizenship on his peace officer license form. Garcia's affirmation of citizenship was a mistake that could have been made by "the average citizen in the community of residence." 8 C.F.R.

---

[1] The catch-all provision provides an exception for aliens who falsely claim to be United States citizens if they have a natural parent that is a citizen, permanently resided in the United States before turning 16, and reasonably believed at the time of making the statement that he was a citizen. 8 U.S.C. § 1101(f). None of these circumstances applies to Garcia.

§ 316.10(a)(2). This conclusion is bolstered by the police department's failure to verify Garcia's immigration status or inform him that United States citizenship was required for the position of peace officer.

59. The Court finds that Garcia meets his burden of showing good moral character. Garcia's wife and children are all United States citizens. (Ex. J–9.) He has the noble dream of working as a police officer. Twice, the City of Hopkins conducted background checks on Garcia and found him to be suitable for the roles of police cadet and peace officer. Accordingly, the Court grants the application for naturalization.

## ORDER OF JUDGMENT

Based on the foregoing, IT IS HEREBY ORDERED THAT Petitioner Edgar Osiel Gallegos Garcia's Application for Naturalization shall be GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: May 9, 2019                              BY THE COURT:

                                                s/Nancy E. Brasel
                                                Nancy E. Brasel
                                                United States District Judge